**CT Corporation**

**Service of Process Transmittal**
04/04/2012
CT Log Number 520267588

**TO:** Gwelyn Nuckols
Masco Corporation
21001 Van Born Road
Taylor, MI 48180-

**RE:** **Process Served in Michigan**

**FOR:** MASCO CORPORATION (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Ace Fire Underwriters Insurance Company, as Subrogee of Hylton Enterprises, Inc., etc., Pltf. vs. Masco Corporation, etc., Dft. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Exhibit(s), Cover Sheet |
| **COURT/AGENCY:** | Prince William County Circuit Court, VA<br>Case # CL122134 |
| **NATURE OF ACTION:** | Property Damage Litigation - Claim of Subrogation - Negligence - Dft. failed to properly install insulation in the attic of the subject property, causing it to be too close to a lighting fixture and catching fire - 04/08/2008 - Seeking $146,091.78 |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Company, Bingham Farms, MI |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 04/04/2012 at 13:15 |
| **JURISDICTION SERVED :** | Michigan |
| **APPEARANCE OR ANSWER DUE:** | Within 21 days after service |
| **ATTORNEY(S) / SENDER(S):** | John B. Mesirow<br>Mesirow & Stravitz, PLLC<br>1307 New Hampshire Avenue, NW<br>Suite 400<br>Washington, DC 20036<br>202-463-0303 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 04/04/2012, Expected Purge Date: 04/09/2012<br>Image SOP<br>Email Notification, Peggy Lynch peggy_lynch@mascohq.com<br>Email Notification, Debbie Cleland deborah_cleland@mascohq.com<br>Email Notification, Gwelyn Nuckols gwen_nuckols@mascohq.com |
| **SIGNED:**<br>**PER:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | The Corporation Company<br>Stephanie Hendrickson<br>30600 Telegraph Road<br>Suite 2345<br>Bingham Farms, MI 48025-5720<br>248-646-9033 |

**EXHIBIT**

*A*

ALL-STATE LEGAL®

Page 1 of 1 / KS

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

SERVE

# COMMONWEALTH OF VIRGINIA



PRINCE WILLIAM CIRCUIT COURT
Civil Division
9311 LEE AVENUE
MANASSAS VA 20110
(703) 792-6029

Summons

To: MASCO CORPORATION
D/B/A: DAVENPORT INSULATION
F/K/A; QUALITY BUILDING
PRODUCTS
21001 VAN BORN ROAD
TAYLOR MI 48180

Case No. 153CL12002134-00

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the clerk's office of this court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment, or decree against such party either by default or after hearing evidence.

Appearance in person is not required by this summons.

Done in the name of the Commonwealth of Virginia on, Monday, March 26, 2012

Clerk of Court: MICHELE B MCQUIGG

by _____Brenda Elford_____
(CLERK/DEPUTY CLERK )

Instructions:   COMPLAINT

Hearing Official:

Attorney's name:   MISEROW, JOHN B
1307 NEW HAMPSHIRE AVE; NW
STE 400: 202-463-0303
20036

COMMONWEALTH OF VIRGINIA:

## IN THE CIRCUIT COURT FOR THE COUNTY OF PRINCE WILLIAM
### Civil Division

---

| | |
|---|---|
| ACE FIRE UNDERWRITERS : <br> INSURANCE COMPANY, as Subrogee of : <br> Hylton Enterprises, Inc. : <br> a/k/a The Hylton Group : <br> 436 Walnut Street : <br> Philadelphia, PA 19106 : <br> : <br>     Plaintiff, : <br> : <br> v. : <br> : <br> MASCO CORPORATION : <br> d/b/a DAVENPORT INSULATION : <br> f/k/a/ QUALITY BUILDING PRODUCTS : <br> 21001 Van Born Road : <br> Taylor, MI 48180 : <br> : <br>     Defendant. : | Civil Action No. _CL12-2134_ |

---

### COMPLAINT

Plaintiff, ACE Fire Underwriters Insurance Company, by its undersigned counsel, sues

Defendant, Masco Corporation d/b/a Davenport Insulation f/k/a Quality Building Products, and

upon information and belief, states as follows:

### THE PARTIES

1.     Plaintiff, ACE Fire Underwriters Insurance Company, is a Pennsylvania

corporation with its principal place of business at 436 Walnut Street, Philadelphia, PA 19106,

and at all times material hereto was authorized to issue insurance policies in the Commonwealth

of Virginia.

2.      Defendant, Masco Corporation d/b/a Davenport Insulation f/k/a Quality Building Products ("Masco"), is a Delaware corporation with its principal place of business located at 21001 Van Born Road, Taylor, Michigan, and at all times material hereto was in the business of installing insulation.

## FACTUAL ALLEGATIONS

3.      At all times material hereto, Plaintiff's insureds, Hylton Enterprises, Inc. a/k/a The Hylton Group ("Hylton"), was developing the Hampton Square Condominiums located at 14847 – 14849 Cloverdale Road in Dale City, Virginia ("Property").

4.      At all times material hereto, Plaintiff provided a builders risk insurance policy which covered construction of the Property under Policy # I20607890005 ("Policy").

5.      Prior to April 8, 2008, Hylton contracted with Defendant to be the insulation subcontractor during the construction of the Property. (A copy of the contract and addendum is attached hereto as Exhibit A).

6.      Prior to April 8, 2008, Defendant installed blow-in insulation in the attic in one of the units at the Property.

7.      On or about April 8, 2008, a fire erupted at the Property ("Fire").

8.      The Fire was the result of a progress lighting fixture igniting the insulation, which was installed without proper clearances by the Defendant.

9.  Pursuant to the terms of the Policy, Plaintiff reimbursed its insured in the amount of $146,091.78 for damages resulting from the Fire.

10. In accordance with the common law principles of legal and equitable subrogation, Plaintiff is subrogated to the rights of its insureds with respect to any claims against Defendant.

2

## COUNT I - NEGLIGENCE

11.    Plaintiff incorporates by reference each of the foregoing paragraphs as though each was fully set forth herein.

12.    The Fire and resulting damage to the Property was caused by the negligence, carelessness, gross negligence and/or reckless disregard for the Plaintiff's insured's property by Defendant Masco, its agents, workmen, and/or employees acting within the course and scope of their employment in:

> a)    failing to properly install and inspect the insulation in the attic at the Property;
>
> b)    failing to ensure proper clearances between the insulation in the attic and the progress lighting fixtures;
>
> c)    failing to install the insulation in accordance with the manufacturer's instructions;
>
> d)    failing to follow applicable local, state and/or federal rules, regulations, ordinances, codes guidelines and/or statutes;
>
> e)    such other and further negligent acts and omissions which may be revealed through discovery.

13.    As a direct and proximate result of defendant's aforesaid negligence, the Fire occurred and resulted in significant damages.

WHEREFORE, Plaintiff demands judgment against defendant in the amount of $146,091.78 together with interest and the costs of this action.

3

## COUNT II – BREACH OF CONTRACT/WARRANTY

14.     Plaintiff incorporates by reference each of the foregoing paragraphs as though each was fully set forth herein.

15.     As part of its contract, Defendant expressly warranted that all materials and workmanship would be new, of good quality, free from faults and done in compliance with all building codes.

16.     Defendant Masco breached its contractual obligations by installing the insulation without proper clearance from the recessed lighting.

17.     As a direct and proximate result of Defendant's breach of the aforesaid contractual obligation, the Fire occurred and resulted in significant damages to Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendant in the amount of $146,091.78 together with interest and the costs of this action.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,

ACE FIRE UNDERWRITERS INSURANCE
COMPANY

BY COUNSEL

John B. Mesirow, Esquire
Mesirow & Stravitz, PLLC
1307 New Hampshire Avenue, NW
Suite 400
Washington, DC 20036
(202) 463-0303
(202) 861-8858 (fax)

4

OF COUNSEL:
Cozen O'Connor
Daniel J. Luccaro, Esquire
1900 Market Street
Philadelphia, PA  19103
(215) 665-2000
*Attorneys for Plaintiff*



# *Masco Contractor Services*

### *D/B/A*
### *Davenport Insulation*
### *(F/N/A Quality Building Products)*
### *7400 Gateway Court*
### *Manassas, VA 20109*
### *703 631-7744*
### *703 631-8730 fax*

Mr. Bill Toone
The Hylton Group
5593 Maple Dale Plaza
Dale City, VA 22182

Re: Company Name Changes and Consolidations

Quality Building Products and Davenport Insulation announced the merger of the two companies in the latter part of 2007. Business will continue to be conducted out of the Davenport Insulation of Manassas location with out interruption of service to the Hylton Group. We welcome this opportunity to continue to provide quality service and building products to the Northern Virginia area as Davenport Insulation of Manassas.

I apologize if this information was not communicated properly to your organization and please do not hesitate to call me or email me if further information or clarification is needed.

As always, we thank you for your business look forward to continuing to work with The Hylton Group in the future.

Sincerely,

Todd Markham
General Manager
Davenport Insulation of Manassas
703 928-7427 cell


PLAINTIFF'S
EXHIBIT
A

Contract No. ___**INSU-01**___

# SUBCONTRACTOR AGREEMENT

Made this _____**12th**_____ day of _____**September**_____ 20 _**06**_ between
      **Day**       **Month**     **Year**

_____**The Hylton Group**_____ And _____**Quality Building Products**_____
Hereinafter referred to as      Hereinafter referred to as
the BUILDER: Dale Builders, Inc.    the SUBCONTRACTOR:

Subdivision name:        House plans:
Hampton Square- 2/2       **CO,CL,CR**

Number of Lots in Subdivision:    Work Contracted:
              Insulation

## GENERAL CONDITIONS

This contract is for a period of one (1) year or until the work specified herein is complete, whichever occurs later. Builder reserves the right to cancel this contract under the provisions provided within. Should a price increase be deemed necessary by the subcontractor, it must be submitted in writing to the Builder forty-five (45) days prior to effective date. Dale Builders is not obligated to accept any price increase and will do so only by written acceptance. Should Dale Builders not accept a price increase, Subcontractor my elect to discontinue new work for Builder by written notice 30 days prior to date of termination. Any work started by Subcontractor prior to Subcontractor's election to terminate shall be completed by Subcontractor per previously contracted pricing.

   IN WITNESS WHEREOF, this agreement has been executed the day and year first above written.

ACCEPTED FOR SUBCONTRACTOR:    ACCEPTED FOR BUILDER:
BY _Anthony Bryand_       BY _Rodson_
TITLE _Division Mgr._        TITLE _O O P_
_6616 James Madison Hwy_      DATE: _10/9/06_
ADDRESS: _Haymarket VA 20169_    5593 Mapledale Plaza
DATE: _9/25/06_         Dale City, Virginia 22193

# DALE BUILDERS

## STANDARD FORM OF AGREEMENT
## BETWEEN BUILDER AND CONTRACTOR
## (SUPPLIER AND INSTALLER)

This is an Agreement (the "Agreement") between Dale Builders ("Builder") and the Contractor that is identified on the Cover Sheet ("Contractor"). The term "Contractor" includes both a "Supplier" and an "Installer." A "Supplier" furnishes materials without installation or labor. An "Installer" either (i) provides both materials and installation or labor or (ii) provides only labor. Where no distinction is made between a Supplier and an Installer, the terms of this Agreement apply to both types of Contractor. Reference is made to the Cover Sheet, which is an integral part of this Agreement.

### ARTICLE I: CONTRACT DOCUMENTS

#### 1.1    Contract Documents

The Contract Documents consist of this Agreement, the Cover Sheet, all attachments in the form of pricing and addenda (including the Contract Price Sheet and the Contractor Invoicing Requirements), the plans, various drawings, the specifications, lot information sheets, structural selection sheets, design center selection sheets, sales contract addendum, Scope of Work, and any other documents identified by the parties as pertaining to this Agreement. The foregoing documents form the contract between the parties.

#### 1.2    The Work

The Work includes all labor and/or materials necessary to procure any materials required by the Scope of Work and deliver them to the job site, properly stored and/or stacked and protected from the elements.    In the case of an Installer, the Work also includes all additional labor and materials to install any materials as required by the Contract Documents and the Scope of Work, and includes all materials and equipment incorporated in such installation.   Substitution of materials (including brand names) from those specified in the Contract Documents is prohibited without the express written consent of Builder. All construction must be completed in full compliance with all applicable building codes and regulations.   Variation from such codes without written consent of Builder will be the sole liability of the Contractor, including the obligation to bring the Work into compliance at no additional cost to Builder. If the Plans and Specifications call for a higher level of performance or higher quality materials than the Scope of Work, the Plans and Specifications will govern. If additional work is required that is not within the Contract Documents, the cost and specifications of such additional work is not part of this Agreement unless and until it shall have been approved by Builder prior to the start of such additional work. Builder shall have no obligation to pay for unauthorized work or substituted materials under contract or quantum meruit or otherwise.

#### 1.3    Builder to Supply Utilities, Etc.

Unless otherwise specified in the Contract Documents, Builder shall provide reasonable amounts of water and sufficient electricity necessary to complete any portion of the Work to be performed on the job site. Builder shall furnish and maintain temporary lavatory facilities (commonly known as "Portajohns") at the job site.  Contractor shall strictly observe Builder's rules on lavatory usage.

## ARTICLE II: RESPONSIBILITY OF CONTRACTOR

### 2.1   Review of the Contract Documents

Contractor is responsible for knowing and following the Contract Documents.  Contractor is responsible to perform the Work based on the specifications contained in the Contract Documents.  Contractor shall report to the Builder any error, inconsistency or omission that Contractor should reasonably discover in the Contract Documents.

### 2.2   Modification of Contract Documents

No waiver, modification or amendment of any item of the Contract Documents shall be valid unless made in writing and approved by the Builder's Construction Manager, Division Coordinator or site superintendent.  If a modification to any Contract Document is necessary, any change in cost shall be identified and agreed upon.  Builder shall initiate a Variance Purchase Order ("VPO"), which must be used for payment.

### 2.3   Supervision and Construction Procedures by Installers

An Installer shall competently supervise, direct, and perform the installation component of the Work. Installer shall be responsible for all construction means, methods, techniques, sequences and the coordination of the Work, subject to Builder's right to schedule and coordinate the Work with that of other contractors or trades.  Installer shall use adequately trained employees to perform the Work.  Unless otherwise specifically provided in the Contract Documents, Installer shall provide and pay for all labor, materials, equipment, tools, machinery and other services necessary for completion of the Work.  Installer shall enforce strict discipline and safety rules among Installer employees and shall not assign anyone to the Work who is not adequately skilled to complete the Work properly and on time.  Builder shall have the right to supervise and direct the Work, set schedules, and monitor and enforce quality standards.

### 2.4   Timely Performance

Contractor shall begin and complete the Work on the dates scheduled by Builder.   If a Supplier fails to make a scheduled delivery of materials within two (2) days after a scheduled delivery date, the Builder shall have the right to terminate this Agreement without notice and hire another Supplier to complete the Work at Supplier's expense.  Builder shall have no liability to Supplier as a result of such termination.  If an Installer fails to show up on the job with all materials necessary to begin the Work within two (2) days after the scheduled beginning date, or after the work has been started, for a period of two (2) days in succession, the Builder shall have the right to terminate this Agreement without notice and hire another Installer to complete the Work at Installer's expense.  Builder shall have no liability to Installer as a result of such termination.  Builder may suspend or delay the Work, with no liability whatsoever to Contractor. In such event, the deadline for scheduled completion of the Work may be adjusted by Builder.

### 2.5   Warranty

Contractor warrants that all materials and workmanship will be new, of good quality, and free from faults and defects.  Contractor's warranty will remain in effect for one year after the closing of the sale of the home to be built using the Work furnished by Contractor (the "Home").  In addition, Contractor warrants, without time limitation, that all Work complied with applicable building codes and regulations in effect at the time that the Work was furnished.  Contractor shall supply Builder with all manufacturers' warranties in accordance with the Magnuson Moss Warranty Act.

### 2.6   Performance of Warranty Work

Contractor shall perform warranty work in a timely manner as scheduled by the owner of the Home or Builder's warranty personnel, and generally within five (5) working days, and sooner in case of a condition that may involve substantial damage to the House or its contents.  Warranty work must be performed by

people who present a professional demeanor in their appearance and manner. Contractor shall perform all warranty work in a neat and clean manner, and shall, at the end of each work day, remove all construction debris from the home and clean the work area in a manner reasonably satisfactory to the homeowner. Mechanical Contractors must have a 24-hour answering service to handle emergency situations. Builder reserves the right to perform any warranty work on Contractor's behalf if Contractor fails to do so in a timely manner as reasonably determined by Builder, and to deduct the cost of such performance from any amounts owing to Contractor under this Agreement or any other agreement between Contractor and Builder, or to collect from Contractor any such amounts (a "Backcharge").

### 2.7 Permits and Fees

Contractor shall give all notices and comply with all laws, ordinances, rules, regulations and orders of any public authority and of the subdivision, development or homeowners' association. This includes, but is not limited to, federal, state, county and city jurisdictions. This also includes all building codes, OSHA and EPA regulations. If Contractor performs any work contrary to such rules and laws, Contractor shall assume full responsibility and all costs attributable to bringing the Work into full compliance. Contractor shall obtain and pay for all permits, licenses and official inspections necessary for the Work.

### 2.8 Additional Responsibilities of Installers

1. An Installer shall employ a competent foreman who shall be in attendance at all times while the Work is being performed. The foreman shall represent the Contractor in all dealings, both verbal and written, and is hereby authorized to bind the Contractor in any such dealings.

2. Before proceeding with the Work, an Installer will accurately check all work previously completed by other trades in any way relating to the Work. Any defects found in previous work must be reported to the Builder's representative on the job site for immediate correction, before any Work takes place. If Installer proceeds to do the Work over defective or incomplete previous work, without so notifying such representative, then Installer shall be responsible for any repairs related to such previous work.

3. An Installer shall do all cutting and fitting of the Work as necessary. This cutting and fitting must not adversely affect the structural integrity of the Home or inhibit the work of other trades. Further, the Installer is responsible for sealing (as required by the Builder), and/or fire stopping (as required by code), any holes cut by the Installer.

### 2.9 Cleaning Up

Contractor, on a daily basis, shall keep the job site free of waste or debris caused by Contractor's performance of the Work. Contractor shall clean up any dirt, mess or debris and repair any damage to any property, including private and public streets, associated with or as the result of any Work. Upon the completion of the Work, Contractor shall remove all of its waste and debris from the construction site and deposit said waste in a container designated by Builder. If Contractor fails to clean up as provided herein, Builder reserves the right to Backcharge Contractor for the total cost of clean-up, or, if less, a minimum of $100 for the first occurrence and $150 for each occurrence thereafter. Repetitive failure by the Contractor to clean up debris associated with the Work may result in termination of this Agreement.

### 2.10 Sales Tax

The quoted price of the Work as set forth in the contract Documents includes any sales and use taxes payable in connection with the Work. Contractor shall pay and report the applicable sales tax on taxable items to the state of Virginia, as required by law. Contractor shall indemnify and hold Builder harmless of and from any claim for such taxes.

**2.11    Safety & OSHA**

1.  Contractor and its employees are responsible for initiating, maintaining and supervising all safety and OSHA requirements applicable to the Work. Failure to do so may result in termination of this Agreement.

2.  Contractor shall understand, practice and promote all OSHA and Builder safety rules and regulations while on the job site. If OSHA levies a fine against the Builder for nonconformance by the Contractor with OSHA rules and regulations, then Contractor shall pay the same before any due date.

3.  Builder shall have the right to conduct routine safety audits at all building sites. If Contractor is found to be in violation of this Agreement or of Builder and/or OSHA regulations, the Builder's representative may (but shall not be obligated to) issue written reprimand forms to the violators. If Contractor continues to commit or allow such violation, Builder shall have the right to terminate this Agreement without further notice.

4.  If Builder receives an OSHA violation or penalty because of Contractor's noncompliance with any applicable rules or regulations, Contractor shall be responsible for any amount incurred, which may be Backcharged to Contractor.

**2.12    Certain Additional Safety Rules for Installers**

An Installer's job site safety responsibilities include, but are not limited to:

1.  Opening Protection:  Railings, opening covers, and other protective devices that have been installed by Builder or others and removed by Contractor must be replaced promptly by Contractor.

2.  Scaffolds and Ladders: All scaffolding and ladders used on the job site shall adhere to and be erected in accordance with prescribed safety standards. All scaffolding eight feet (8') or more above the ground or supporting level shall be provided with full guard rail and toe board protection and shall be tied off to the structure or guide at all times.

3.  Fire: Installer shall secure and have on the scene additional fire protection apparatus as might be warranted by the particular job.

4.  Hard Hats and Other Protective Clothing and Equipment: All personnel shall be required to wear hard hats where appropriate, proper shoes (hard sole, no tennis shoes), clothing and appropriate protective equipment such as goggles, gloves, etc. suitable for the work task being performed at all times and at all locations on the Project.

5.  Radios: Radios, cassette decks, CD players, "Walkman," etc. are not allowed on the job site.

6.  Miscellaneous: Power tools must be grounded and guarded. Liquor and drugs are prohibited on the job site. Glass containers may not be brought onto the job site. Harassment of any kind is strictly prohibited.

**2.13    Default**

If Contractor shall fail to commence the Work, abandon the Work, fail to meet schedules established by Builder or in accordance with the Contract Documents, or fail or refuse to keep or perform any of the provisions of this Agreement or be adjudicated bankrupt or take advantage of any bankruptcy or insolvency act or make a general assignment for benefit of its creditors or if a receiver be appointed on account of its insolvency, then and in each and any such event, Builder may terminate this agreement by giving Contractor 24 hours notice of election to do so. Upon receipt of such notice Contractor shall immediately discontinue the Work. Builder may, in addition to any other rights it may have, take possession of all materials, tools and equipment of the Contractor at the job site for the purpose of completing the Work. Builder shall have the right to have the Work completed by a third party and deduct any cost so incurred from the Contract Price otherwise due Contractor. Builder shall have the right to recover from Contractor all costs and expenses of correcting Contractor's default (including "soft" costs, architects' fees, and the like) or the amount of reduction in the value of the Work to the extent not corrected. Contractor shall be liable to Builder for all additional damages resulting from Contractor's default, which need not be based strictly on any percentage of hours worked or percentage of the Work completed, and may include incidental or consequential damages and lost profits. Contractor shall be liable to Builder for any penalties or contract clauses that result in Builder being charged for late or defective performance, to the extent that the same was caused in whole or in part by Contractor's default. The foregoing damages for Contractor's default are referred to as "Builder's Damages." Builder's Damages shall be reduced by a credit to Contractor for Contractor's costs of labor and materials for Work properly completed up to the date of Contractor's default. Builder's Damages shall be calculated after the Work has been completed. The Work shall not be deemed to have been completed until all applicable contract requirements, inspections, code requirements, and repair periods under the applicable home sale contract and Builder repair policies have expired. If the then-unpaid balance of the Contract Price is less than Builder's Damages, then Contractor shall be liable for the difference and shall pay the same to Builder within ten (10) days after demand. If the then-unpaid balance of the Contract Price exceeds the amount of Builder's Damages, the amount of such excess shall be paid to Contractor within (30) days after completion of the Work. Notwithstanding any provision to the contrary, termination of this Agreement shall not relieve either party from liability arising prior to termination, nor shall it affect Contractor's guarantee of the portion of the Work performed or to indemnify, defend and hold Builder harmless as provided in this Agreement.

**2.14    Indemnity and Hold Harmless**

1.  Contractor shall defend and indemnify Builder against and save Builder harmless from any and all claims, suits, or liability for damages to property including loss of use thereof, injuries to persons, including death, and from any other claims, suits or liability on account of acts or omissions of Contractor, or any of its Contractors, suppliers, officers, agents, employees or servants, whether or not caused in part by the active or passive negligence or other fault of Builder.  Contractor's obligation hereunder shall not be limited by the provisions of any Workers' Compensation act or similar statute.

2.  Contractor shall defend and indemnify the Builder against, and save Builder harmless from any and all loss, damage, costs, expenses and attorneys' fees suffered or incurred on account of any breach of Contractor's obligations and covenants under this Agreement, including incidental, consequential, or punitive damages. Builder shall have the right to select counsel to undertake any such defense. Contractor shall bear the cost of Builder's legal fees and expenses for such defense. Builder shall have a right of offset against any sums due to Builder under this Agreement or under any other agreement between Builder and Contractor, for any claims that Builder may have against Contractor under this Agreement or under any other agreement between Builder and Contractor.

### 2.15   Insurance

Contractor shall provide workers compensation insurance and liability insurance as required below. Contractor shall furnish the Builder a copy of insurance certificates prior to commencing Work. Insurance coverage must meet the following minimum requirements:

1. Commercial General Liability coverage including Products-Completed Operations, Contractual Liability, Personal Injury Liability and Broad Form Property Damage including completed operations with limits of:

| | |
|---|---|
| $1,000,000 | Each Occurrence |
| $2,000,000 | General Aggregate |
| $2,000,000 | Products/Completed Operations Aggregate |

   The insurance certificate must evidence that explosion, underground and/or collapse coverage is included if Contractor's operations have an exposure under one of these items.

2. Business Automobile Liability including protection for owned, hired and non-owned vehicles with a limit of $1,000,000 each accident.

3. Statutory Workers Compensation to comply with the laws of the state in which Contractor's business is located, the state in which the Work will be performed, and any state in which an employee of Contractor assigned to the Work resides. Employer's Liability with a limit of $1,000,000 shall be included.

4. Umbrella Liability of $4,000,000 over the above coverages.

5. Builder shall be named as additional insured on all policies, (wording should read: Dale Builders, Inc. and Hylton Enterprises as additional insured pursuant to Form CG2010-85"). Contractor's insurance shall be primary and any other insurance carried by Builder shall be excess only and will not contribute with Contractor's insurance.

6. The certificates of insurance verifying compliance with these requirements shall be sent to Builder with a written provision for 30 days prior written notice before cancellation, non-renewal or material change of the insurance coverages.

7. All of Contractor's insurance policies shall include a waiver of subrogation against Builder.

### 2.16   Lien Satisfaction

Contractor hereby expressly waives any right to file or claim a mechanic's lien against the job site or any structure thereon or any other property of the Builder. Contractor shall defend and indemnify the Builder against and save it and the job site and each home therein harmless from any and all claims, suits or liens therefor by Contractor and any of Contractor's suppliers, contractors, or laborers. Without limiting the applicability of the foregoing sentence, Contractor agrees to remove, at Contractor's sole expense, by bonding off or otherwise, within twenty (20) days after notice from Builder, all liens and encumbrances against the job site or any structure constructed thereon relating to Contractor's Work and/or materials and those of Contractor's contractors, suppliers, or laborers. Contractor shall execute and shall obtain from any of its contractors and suppliers, any mechanics' lien affidavit that Builder reasonably requests. Contractor shall provide a notarized final mechanics' lien affidavit with the final bill indicating that all materials used on the job and all labor used on the job have been paid in full. Final bills will not be accepted without such signed affidavit. Builder reserves the right to require interim lien waivers.

**1.17    Termination Without Cause**

Builder reserves the right to terminate this Agreement without cause at Builder's sole and absolute discretion after written 72-hour notice. Upon such termination, Contractor shall relinquish any permits obtained by Contractor in Builder's name. Builder shall pay for Work actually performed up to the standards required by this Agreement, for materials actually delivered and/or installed, and for materials stockpiled by Contractor especially for delivery under this Agreement, if such stockpiled materials are actually delivered on time and in satisfactory condition. Thereupon, all parties shall be released from further liability hereunder. Builder reserves the right to hold in escrow, without interest, a sufficient amount of funds that Builder deems reasonable and necessary for protection against future warranty work for which Contractor may be responsible ("Warranty Escrow"). The Warranty Escrow may be withheld from any payment otherwise due the Contractor. When Contractor no longer has any warranty obligation, any funds remaining in the Warranty Escrow will be disbursed to Contractor by Builder.

## ARTICLE III: PAYMENT

**3.1    Payment Policy**

The Work must be completed and the invoice approved by Builder's representative prior to submission of the invoice for payment. All required building code compliance inspections must be completed and documented before an invoice may be submitted. Invoices must be submitted within one hundred twenty (120) days after completion of the Work. Late invoices may be subject to non-payment. In no event shall Builder be liable for invoices presented more than one hundred twenty (120) days after the completion of the Work, and by its failure to present an invoice within such time period, Contractor expressly and irrevocably shall be deemed to have waived any claim whatsoever for compensation for such Work under contract, quantum meruit, or otherwise. Contractor shall follow Builder's Contractor Invoicing Requirements, attached hereto. If there is a conflict between this form Agreement and the Contractor Invoicing Requirements, the Contractor Invoicing Requirements shall control.

1.   Contractor agrees to comply with Builder's purchase order, variance purchase order and invoicing policies and procedures as provided to Contractor from time to time. A current copy of these policies and procedures is attached to this Agreement.

2.   Supplier payment is mailed on the Friday closest to the tenth (10th) of the month for invoices properly submitted in the preceding month to Dale Builders office. Payment discounts, if any, shall be stated as on the Contract Documents. Subcontractors are paid every two weeks. Supplier and/or subcontractor requests for payment must include a purchase order or variance purchase order number to be processed. Payment submissions not including a purchase order or variance purchase order number will be returned. Requests for payment must be in Dale Builders office by 2:00 pm on the Wednesday before the payment week.

3.   Invoices that do not comply with Builder's requirements may be rejected or delayed. Builder may delay payment on an invoice in order to reasonably investigate the items on the invoice and/or the compliance of the Work with this Agreement.

4.   Progress payments, if allowed, shall be specified in the Contract Documents. Contractor shall have no right to payment before full completion of the Work unless specified in the Contract Documents.

5.   Builder shall have the right to withhold, suspend or refuse all or a portion of payment for any one or more of the following reasons. In such case, provided that Builder shall give to Contractor a written explanation of the circumstances involved.

     a.   Contractor delivers defective materials or performs defective Work and fails to remedy the same within a reasonable period of time.

b.   The filing of third party claims, or Builder has reason to believe third party claims will be filed.

c.   Contractor's failure to pay its subcontractors, suppliers or laborers.

d.   Reasonable evidence that the Work cannot be completed for the unpaid balance of the Contract Price agreed to herein.

e.   Damage to Builder, another contractor, or the project.

f.   Reasonable evidence that the Work will not be completed within the time required, and that the unpaid balance under this Agreement will not be adequate to cover Builder's damages therefor.

g.   Contractor's persistent failure to carry out the Work in accordance with the Contract Documents.

h.   Setoff for claims of Builder under any agreements with Contractor.


## ARTICLE IV: MISCELLANEOUS


### 4.1     Captions

The captions and headings of various Articles and Sections of this Agreement and Contract Documents pertaining hereto are for convenience only and are not to be considered as defining or limiting in any way, the scope or intent of the provisions hereof.


### 4.2     Merger

This Agreement constitutes the entire agreement of the parties with respect to subject hereof, and all prior discussions, negotiations and document drafts are merged herein and therein.    Neither party nor any employee of any party has made or is authorized to make any representation or agreement upon which the other party may rely unless such matter is in writing signed by authorized officers of both parties.


### 4.3     Notices

Any notice, demand, request or other communication that any party hereto may be required to give or may desire to give hereunder shall be in writing, addressed as shown on the Cover Sheet to this Agreement. Notice shall be deemed to have been properly given if hand delivered, if sent by reputable overnight courier (effective the business day following delivery to such courier) or if mailed (effective two business days after mailing) by United States registered or certified mail, postage prepaid, return receipt requested or at such other address as the party to be served with notice may have furnished in writing to the party seeking or desiring to serve notice as a place for the service of notice. Notices given in any other fashion (including facsimile transmission) shall be deemed effective only upon actual receipt.

**4.4     Modification; Waiver**

No modification, waiver, amendment, discharge or change of this Agreement shall be valid unless the same is in writing and signed by the party against which the enforcement of such modification, waiver, amendment, discharge or change is sought.

**4.5     Governing Law**

This agreement shall be governed by and construed under the internal laws (as opposed to the laws of conflicts) of the Commonwealth of Virginia.

**4.6     Definitions Include Amendments**

Definitions contained in this Agreement that identify documents shall be deemed to include all amendments and supplements to such documents from the date hereof, and all future amendments and supplements thereto entered into from time to time to satisfy the requirements of this Agreement or otherwise with the consent of the parties. Reference to this Agreement contained in any of the foregoing documents shall be deemed to include all amendments and supplements to this Agreement executed by both parties.

**4.7     Time Is of the Essence**

Time is of the essence of this Agreement and of every part hereof.

**4.8     Execution in Counterparts**

This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement.

**4.9     Claims Against Builder**

Builder shall not be in default under this Agreement unless a written notice specifically setting forth the claim of Contractor shall have been given to the Builder within thirty (30) days after the Contractor first had knowledge of, or reasonably should have had knowledge of, the occurrence of the event which the Contractor alleges gave rise to such claim and the Builder does not remedy or cure the default, if any, promptly thereafter. If it is determined in any proceedings that the Builder has improperly failed to grant its consent or approval, where such consent or approval is required by this Agreement, the Contractor sole remedy shall be to obtain declaratory relief determining such withholding to have been improper, and reimbursement of the Contractor's reasonable legal fees and expenses in pursuing such claim, and the Contractor hereby waives all claims for damages or set-off against the Builder resulting from any withholding of consent or approval by the Builder. Notwithstanding any provision of law, any legal action instituted against Builder arising from this Agreement must be filed within (1) one year after Contractor knew or had reasonable cause to know the facts giving rise to such claim.

### 4.10   Jurisdiction and Venue

With respect to any suit, action or proceedings relating to this Agreement each party irrevocably (i) submits to the non-exclusive jurisdiction of the state and federal courts located in the Commonwealth of Virginia, and (ii) waives any objection which it may have at any time to the laying of venue of any proceedings brought in any such court, waives any claim that such proceedings have been brought in an inconvenient forum and further waives the right to object, with respect to such proceedings, that such court does not have jurisdiction over such party.   Nothing in this Agreement shall preclude either party from bringing proceedings in any other jurisdiction nor will the bringing of proceedings in any one or more jurisdictions preclude the bringing of proceedings in any other jurisdiction.

### 4.11   Severability

The parties intend and believe that each provision in this Agreement comports with all applicable local, state and federal laws.   However, if any provision or provisions, or if any portion of any provision or provisions, in this Agreement is found by a court of law to be in violation of any applicable law, and if such court declares such portion, provision, or provisions of this Agreement to be illegal, invalid, unlawful, void or unenforceable as written, then it is the intent of all parties hereto that such portion, provision, or provisions shall be given force to the fullest possible extent that they are legal, valid and enforceable, and that the remainder of this Agreement shall be construed as if such illegal, invalid, unlawful, void, or unenforceable portion, provision, or provisions were not contained herein, and that the rights, obligations, and interests of the parties under the remainder of this Agreement shall continue in full force and effect.

### 4.12   Retainage

Retainage is required of all Contractors.   Retainage amounts and conditions are as stipulated under a separate document know as Permanent Retainer Agreement

The balance of this page has been left intentionally blank.

## MANOR SERIES 2/2 CONDO
## STANDARD FEATURES AND SPECIFICATIONS

### 4/14/08

**Appliances**

| | |
|---|---|
| | As Manufactured by General Electric |
| Colors Available | White – Standard, Optional - Black or Stainless |
| Dishwasher | Model GSD2200GWW |
| Range | Gas – Self Cleaning  Model JGBP28WEKWW |
| Microwave | Model JVM1441WW1 - (non-vented) |
| Disposer | Badger I |
| Refrigerator | 22 Cu Ft  Model GTS22WCPWW |

**Cabinets**

| | |
|---|---|
| | Flat Panel Picture Frame Panel – Oak |
| Colors Available | Spice & Honey |
| Species | Oak Frame and Door |
| Kitchen Cabinets | 42" Wall Cabinets w/ crown mold |
| Vanity Cabinets | Std Height Secondary Baths: Raised Height Owner's Bath - Oak |
| Hardware | Brass Knob – Round Face |

**Ceramic Tile**

| | |
|---|---|
| | As Manufactured by Florida Tile |
| Master Bath | |
| Floors | 6 x 6 Matt Glaze – White |
| Walls | 6 x 6 Bright Glaze – White |
| Secondary Full Bath | |
| Floors | Resilient – Ceramic optional |
| Walls | 6 x 6 Bright Glaze – White |
| Powder Room – Main Level | 6 x 6 Matt Glaze - Natural |
| Tub/Shower or Shower Surrounds | Approx. 77" AFF |
| Tub Only Surrounds | Two Courses with cap |
| Grout | White – Unsanded Latex Modified |
| Subwall – Shower at tile floor | Dens Shield |
| Subwall – Tub/Shower or Showers – Fiberglass Pan | Dens Shield |
| Underlayment Subfloor | Durarock or equal |

**Countertops**

| | |
|---|---|
| Kitchen Countertop | Wilsonart Brand Laminated Surface (Select colors standard) |
| Kitchen Sink | Double Bowl Style – Stainless Steel – Drop In |
| Vanity Top | Cultured Marble – White/White |
| Style | Rosewood Bowl/Dripless Edge |
| Shape | Oval |

**Drywall**

| | |
|---|---|
| Firewall | Per Plans |
| Rating/Design | Per Plans |
| Non Rated Walls/Ceiling | ½" Gypsum Glue/Screwed (Perimeter Nail) |
| Garage Walls/Ceiling | Single Layer 5/8" FC |
| Finish – Home | Smooth Finish Throughout |
| Finish – Garage | Taped only |

**Electrical**

| | |
|---|---|
| Main Service | 200 or 400 AMP, Stand per Plan |
| Panel Box | As manufactured by General Electric |
| Exterior Fixtures | One at all exterior door locations |
| Exterior Outlets | Front and back door location (if applicable) |
| Post Light | Post Light with photo eye on house |
| Prewires | Structured wiring (non-amplified box) |
| Telephone | Three (3) Standard |
| Locations | TBD by buyer (unless already installed) |
| Cable TV | Three (3) Standard |
| Locations | TBD by buyer (unless already installed) |
| Ceiling Fans | Optional |
| Locations | TBD by Buyer (unless already installed) |
| Garage Door | per Door; Single Outlet |
| Smoke Detectors | Bedrooms & Stairwell Transitions |
| Door Chime | Door Button with Single Chime |
| Switching | Toggle - White |
| Switch and Outlet plates | Med Size - White |
| GFI Circuits | Bath, Kitchen, Exterior, Wet Area |
| Dryer 220V Outlet | Standard |
| Light Fixtures | As manufactured by Progress Lighting – See Package for styles |
| Security System | Optional |

**Exterior Doors/Windows**

| | |
|---|---|
| Doors | |
| Entry Door | Insulated, Smooth-Star Fiberglass or equal |
| Patio Sliding Glass Doors | size and location per plan. Insulated glass. GBG: Optional  Swing Doors per plan |
| Garage Entry Door | Steel, 6-panel. |
| Garage Door | Coachman Series Model C-11, insulated metal, pre- finished white With SQ22 Style Windows, as manufactured by Clopay. |
| Garage Door Opener | Rough-In Only – Door Manual |

1

MANOR SERIES STANDARD FEATURES (CONT.)

**Exterior Doors/Windows (continued)**

    Windows
        Main Living Area                     Vinyl Single Hung w/ half screen & insulated glass, GBG
        Basement Foundation – Buried Condition      Vinyl Awning style

**Exterior Finishes**

    Roof
      Shingles – Main Roof                 25 yr Shingles by Tamko w/ 15# felt underlayment
      Colors Available                   Rustic Black, Antique Slate, Weathered Wood
      Flashing                        Brown-Metal
      Bay Window – Front                Brown-Metal
      Bay Window – Side                  Shingles
      Bay Window – Rear                 Shingles
      Attic Ventilation                  Ridge Vent
      Drip Edge                      Eave area
      Snow Guard                   Eave area 36"
    Siding                         As Manufactured by Norandex
      Style                        Shenandoah 6 1/2" Beaded Panel
      Shutters                    Panel – Vinyl
    Masonry Facade
    Brick Front (if applicable)            Brick Skirt Standard per plan w/ Optional Stone Skin or Full Brick
                                    Front: See Plan for Detail – Standard Models; Size as Manufactured
                                    by General Shale
      Brick Side (if applicable)          same as above
      Dryvit (if applicable)            Moisture Drainage – Dryvit Residential MD System
        Subsiding                  7/16" OSB in Dryvit area only
    Gutters & Downspouts
      Raised/pantel                  White/Seamless Aluminum
      Gutter Size/Gauge           5" Ogee, .27 gauge
      Downspout Size/Gauge        2 x 3, .24 gauge
      Splash Blocks               Green Fiberglass

**Fireplace**

    Box                          Optional – Brand and Type TBD
                                    Size and location per plan
    Control                       Wall Switch
    Facing/Hearth & Mantle          Slate w/ Paint Grade Classic Style Wood Mantle
                                    Upgrade facings and mantles optional
    Fuel                         Electric

**Flooring**

    Carpet                     Shaw – Home Foundations – Bayview
    Padding                   3/8" Pad Spec
    Resilient                   Armstrong - Initiator
      Underlayment              1/8" lran on non-concrete areas
      Trim Mold                  Wood Base and Shoe Molding
    Hardwood                 Bruce Hardwood – Brazil Strip ¾"
      Trim Mold                  3/4" Shoe- Color to Match Hardwood
    Areas (as they apply to house type)
      Living Room                 Carpet
      Dining Room                Carpet
      Family Room                Carpet
      Library/Study               Carpet
      Bedrooms                 Carpet
      Finished Lower Levels (if applicable)  Carpet
      Upper Stairs               Carpet
      Lower Stairs               Carpet
      Foyer                   Hardwood
      Entry Hall                Carpet
      Kitchen                 Resilient
      Bathroom
        Master Bath           See Ceramic
        Secondary Full Bath      Resilient
        Powder Room (if applicable)  See Ceramic
      Laundry Room (when in finished space)  Resilient
    Transitions
      Carpet – Resilient          Metal Strip
      Carpet – Hardwood         Tuck Under
      Resilient – Hardwood or Ceramic (Public)  Wood Reducer
      Ceramic – Hardwood        Wood Reducer
      Bath Gb – Various Flooring     Marble

**Foundation**

    Walls                      Poured Concrete w/ Brick pattern
    Basement Nominal Height       Per plan area/story standard
    House Slab                 Nominal Nine Foot
    Garage Slab               4" Concrete, smooth finish
    Stoops                   Engineered slab, see plan
    Leadwalk (if applicable)        Poured Concrete
    Drain Tle – Exterior         4" concrete, broom finish
    Drain Tle – Interior         4" w/ gravel at buried conditions
                                  4" w/ gravel under basement slab

2

MANOR SERIES STANDARD FEATURES (CONT.)

**Foundation (continued)**

Foundation waterproofing
    Product — DECO-20 Waterproofing or equal
    Area — Wall Area adjacent to living area at buried conditions
    Termite Treatment — Subterranean Treatment-5yr warranty
    Sump Crock — Sealed Sump Crock as required

**Frame – Material**

Lumber
    Walls — SPF - #2 or Better Const. Grade
    Wall Headers — Hem Fir/Spruce #2 (sized per plan)
    Wall Engineer Headers — Microlam (sized per plan)
    Floors — Engineered I-Joists

Foundation Plate – Sill Sealer — Polyfoam
Structural Steel — Primed, sized per plan
Roof Trusses — Engineered – see plan for detail
Rafters — N/A
Sheeting
    Walls – house — OSB 7/16"
    Walls – Garage/Cabins — OSB 7/16"
    Floors — OSB T & G ¾"
    Roofing — OSB 7/16"
    House Wrap — Tyvek Brand

**Hardware**

Exterior Hardware/Locks — Kwikset
    Front Entry — Copa Style Knob w/ dead bolt (brass finish)
    Garage Door — Copa Style Knob (brass finish)
    Secondary Entry — Copa Style Knob w/ dead bolt (brass finish )
    Door Knocker — Brass Knocker- Ives
    Kick plate – Main Entry Door — 8 x 34 Aluminum Plate, Brass Finish
    House Numbers — 4" Brass- Ives
Interior Hardware/Locks — Kwikset
    Interior Door Locks/Handles — Copa Style Door Knob (brass finish)
    Kitchen Cabinets — See Cabinets
    Grab Bars – Bath — N/A
    Door Stops — Spring & Hinge Style
Interior Finish Hardware
    Mirrors – Full Bath — 3/16" Plate-42" high Polished; edged with J-Channel
    Mirrors – Powder Room — Beveled Oval – 28 x 38
    Medicine Cabinets — 14 x 18 bevel mirror
    Bath Hardware — Two piece chrome
    Shower Enclosures — Clear/Chrome
    Tub Rods — Chrome (Tub/Shower combo applications)
    Blinds — Per custard spec on shades
    Closet Shelving — Metal Ventilated, size and location per plan

**HVAC (Heating & Air Conditioning)**

Lower Zone
    Fuel/Venting — Natural Gas – B-venting
    Thermostat — Digital (non-programmable)
    Manufacture — Goodman
    SEER — 13 or better
    AFUE — N/A
Upper Zone (if applicable)
    Fuel/Venting — Natural Gas – B-venting
    Thermostat — Digital (non-programmable)
    Manufacture — Goodman
    SEER — 13 or better
    AFUE — N/A
    Bath Exhaust Fans — Broan-Nutone or equal
    Registers & Grills — Hart & Cooley or equal

**Insulation**

Wood Frame Walls — R-13 Fiberglass, Kraft Faced
Unfinished Basement Walls — R-11 Blankets w/ Foil Covering
Cantilevers/overhangs — R-30 Fiberglass Batts, Kraft Faced
Garage Ceilings (under conditioned space) — R-30 Fiberglass Batts, Kraft Faced
Ceilings – Flat — R-30 Blown (Cellulose or Fiberglass)
Ceilings – Sloped — R-30 Fiberglass Batts, Kraft Faced
Caulking/Air Seal — Exterior bottom & top plates, corners, and adjacent studs
    Caulked. Windows in framed walls chinked with insulation

**Landscaping**

Lawn
    Front/Side — Sod to limits of clearing
    Backyard — Sod to limits of clearing
    Trees & Shrubs — Professionally Designed – See Layout
    Fencing — N/A
    Mailbox — Painted Post and Box with house numbers

3

## MANOR SERIES STANDARD FEATURES (CONT.)

**Paint**

| | |
|---|---|
| Paint Exterior | |
| Exterior Trim | McCormick – Exterior Luster Acrylic |
| Exterior Doors | McCormick – Exterior Luster Acrylic |
| Foundations (Exposed) | McCormick – Exterior Luster Acrylic |
| Shutters | Exterior Flat to match siding color |
| Wrought Iron Railing (if applicable) | McCormick Oil Base – Color Black |
| Roof Vents | Flat Black |
| Paint Interior | McCormick |
| Woodwork | Semi gloss, Acrylic – Designer White |
| Drywall | Interior Latex Flat |
| Walls & Ceiling | White Shadow |
| Railings | See Trim Interior |

**Plumbing**

| | |
|---|---|
| Service Lateral – Sewer | 4" PVC |
| Service Lateral – Water | Polyethylene to water crock |
| House – Sewer Pipe | PVC |
| House – Water Pipe | CPVC |
| Hot Water Heater | Bradford-White 68 Gallon/9 yr High Recovery Electric |
| Gas Piping | Black Cast Iron or Flexible annular Stainless Steel Gas pipe |
| Gas Appliances | Range, Water Heater, Furnace, and Fireplace(s) |
| Hose Bibs | Two – Nibco (Front/Rear) |
| Fixtures | |
| Tub – Master Bath | Jacuzzi Grand, size & style per plan |
| Tub – Secondary Full Bath(s) | Sterling V2660H3 |
| Shower – Master Bath | Florestone Stand per plan |
| Shower – Secondary Full Bath(s) | Florestone Stand per plan |
| Water Closets | American Standard EF Colony (Oval) |
| Pedestal Sink – Powder Rm. | American Standard Colony |
| Faucets | |
| Vanity/Pedestals | Delta – Chrome Model 520MPU |
| Tub/Shower | Delta – Chrome Model 1343 |
| Soaking/Whirlpool Tubs (if applicable) | Delta – Chrome Model 2730LHP w/ H52 & A52 |
| Shower | Delta – Chrome Model 1323 |
| Kitchen | Delta – Chrome w/ sprayer Model 470 |
| Laundry Hook Up | Weather Standard Pipe |
| Sump Pump | Full buried conditions only – 1/2 HP w/ battery back-up |
| Fire Suppression System | Per Code |

**Trim**

| | |
|---|---|
| Exterior | |
| Cornice | #2 SPF Aluminum Wrapped |
| Porch Railing | #2 Spruce, primed |
| Exterior Stair Railing | |
| Interior | |
| Stairs (Upper) | |
| Stringers | 5/4" Yellow Pine Stringer |
| Risers | 5/8" Plywood |
| Tread | 5/4" Yellow Pine Stringer |
| Stairs (Lower) | |
| Stringers | 5/4" Yellow Pine Stringer |
| Risers | 5/8" Plywood |
| Tread | 5/4" Yellow Pine Stringer |
| Railings | |
| Style | Colonial – oak, prefinish stain |
| Finish | Six Stain Colors; White Painted Balusters |
| Doors | Two Panel Colonial, Wood grain. Optional Lead French Door @ 1st Floor Study |
| Trim | |
| Base Molding | 3 ½" FJ Standard Colonial Trim |
| Swing Door Casing | OC36 FJ Standard Colonial Trim |
| Window Sill space | OC36 FJ Standard Colonial Trim |
| Window Sills | Wood, nosed |
| Stair Stringer Mold | Ogee Top and underside of stringer |
| Crown Molding | 3 5/8" FJ Standard Colonial Trim at Living Room, Dining Room, Foyer and 2nd floor Hall |
| Chair Rail | N/A |
| Attic Access | Access Panel |

**Miscellaneous**

| | |
|---|---|
| Driveway | Concrete |

NOTE: BUILDER RESERVES THE RIGHT TO SUBSTITUTE "OR EQUAL" PRODUCTS TO EXISTING STANDARD FEATURES AND SPECIFICATIONS.

4

Addendum No. _____ 2 _____

# SUBCONTRACTOR ADDENDUM AGREEMENT

Made this _____ 25th _____ day of _____ January _____ 20 __ 08 __ between
          Day                                Month                        Year

Dale Builders, Inc.                    And    Davenport Insulation of Manassas
Hereinafter referred to as                    Hereinafter referred to as
the BUILDER                                   the SUBCONTRACTOR

Subdivision name: Hampton Square 1/2          House plans: C10 Camden & C20 Daven
                  Condominiums

                                              Work Contracted: Insulation

## GENERAL CONDITIONS

This addendum to the previously ratified Dale Builders' Subcontractor Agreement between the
Subcontractor and the Builder at the Hampton Square 2/2 Condominiums is for a period of one (1)
year from date of this addendum or until the work specified herein is complete, whichever occurs
later. All conditions, scopes of work, etc. as originally contracted for at above said subdivision shall
be in full force at the subdivision added by this addendum.

Scope of addendum:
See attached Schedule C for applicable pricing as covered by this addendum.
Name change for original contracted subcontractor from *Quality Building Products* to
*Davenport Insulation of Manassas*. This is a change in name only and is still the original
subcontractor as contracted for this project.

        IN WITNESS WHEREOF, this agreement has been executed the day and year first above
written.

ACCEPTED FOR SUBCONTRACTOR:           ACCEPTED FOR BUILDER:
BY                                    BY
TITLE                                 TITLE                     DATE:
ADDRESS:                              5593 Mapledale Plaza
DATE:                                 Dale City, Virginia 22193

# Dale Builders, Inc.
### (Revised 12/30/04)

## Scope of Work: Insulation

1. Subcontractor to supply all labor, material, tools, supplies, and equipment necessary to do a complete job of insulation according to the terms of this contract. Material to include but not limited to batt insulation, blown insulation, staples, wiring anchors, baffles, glue and any other item necessary to do a complete insulation job. This contract excludes duct and plumbing insulation wrap.

2. Subcontractor will deliver materials to site in undamaged condition. Material will be marked according to manufacturer, value and code approvals. Material must be protected against dampness before and after delivery. Conditions existing inside the house, which may cause the insulation to get wet, will be notified to the Builder prior to completion of work.

3. Fiberglass wall insulation will be supplied on this contract. Blown Cellulose material as manufactured by L.P. – Cocoon will be used in the attic flat ceiling areas. Substitution of this material will not be accepted without written approval of Builder.

4. Insulation will be installed in accordance with manufacturer's printed instructions. Installation of insulation only when construction has advanced to the point that remaining construction operations will not damage the insulation.

5. Insulation will be cleanly cut at outlets and other wall conditions to insure a complete envelope between conditioned and unconditioned areas.

6. Installation of Batt and Blanket type insulation will occur in wall cavities, band boards, concealed ceilings (garage to room floor) and bay window heads. Application will be via nails, staples, fastener straps or tape to insure continuous seal and prevent air infiltration.

7. Staple 3-1/2 inch (R-13) kraft faced or vapor back insulation in all exterior sidewalls and non-cantilever joist ends. Stapling to be within the stud cavity to allow for drywall glue and screw application to the stud face.

8. Staple 9 inch (R-30) kraft faced insulation in top and bottom of dormers, window projections and floor overhangs, etc.

9. Install fiberglass blankets (R-30) in flat ceiling over garage connected to living space and in sloped ceiling areas. R-30 cellulose material will be blown into flat attic space adjacent to living area. Subcontractor during batt installation will place blown gauges in attic a minimum of 15' from access opening and a minimum of two gauges per attic cavity requiring blown insulation.

10. As part of the blown insulation work, Subcontractor will provide an R-30 loose batt for over the attic access panel. Batt will be a minimum of 18" longer than the hole and 23 1/2" in width.

11. Install 3.4 polystyrene blanket insulation in all offset areas (when block construction is used).

Initial _AB_                                          Initial _____

12. Install R-11 perforated foil faced 3-1/4 inch fiberglass blanket (flame spread 25) insulation on all exterior non-framed basement walls. Use a shot and washer fastening system to hold this insulation to masonry / concrete walls. Minimum height of 4' feet from top wall. This insulation is to extend from ceiling to within 4" of floor.

13. Install 9 inch (R-30) kraft faced batts or vapor back insulation in ceiling of loft or cathedral ceiling units.

14. All open areas in walls and ceilings, around doors, windows, etc., and at eaves to be stuffed with insulation and completely insulated.

15. Furnish and install cardboard stops at eaves to ensure proper ventilation and to prevent insulation from getting into soffit vents.

16. All fastening of batts to comply with manufacturer's recommendations.

17. Builder must be notified in writing in event there is a shortage of the standard material being used for approval of any substitutions.

18. In townhouse application all offsets to receive R-13 in 2 x 4 partitions.

19. Insulation behind electrical boxes cut neatly and tightly around electrical boxes. (NOTE: You have to be especially careful not to compress insulation so as to create voids).

20. Skylight shaft to be insulated with R-19 batt applied to studs.

21. Insulation must comply with appropriate county's energy code and Model's Energy Code (even if it exceeds scope specifications).

22. No vapor barrier, or kraft faced insulation behind bath tub and shower walls.

23. Subcontractor is responsible for clean-up of all materials and debris left from his work.

24. Subcontractor to supply Builder with one bag of rock wool per every four units for fire stopping use by others.

Initial _AB_                                                        Initial _____

INSULATION 9/6/06                          QUALITY BUILDING PRODUCTS                          HAMPTON SQUARE

| TRADE | HOUSE | DESCRIPTION | OPTIONS | AMOUNT |
|-------|-------|-------------|---------|--------|
| 23 INSULATION | C100001 | C10 CAMDEN - UNITC BASE | INSULATE WALLS DRAW 1 | $ 1,075.00 |
| 23 INSULATION | C100001 | C10 CAMDEN - UNITC BABE | INSULATE CEILING DRAW 2 | $ 1,075.00 |
| 23 INSULATION | CL10001 | END UNIT LEFT CAMDON-BASE | INSULATE END UNIT LEFT CAMDON | $ 300.00 |
| 23 INSULATION | CR10001 | END UNIT RIGHT CAMDENBASE | INSULATE END UNIT RIGHT CAMDON | $ 300.00 |
| | | | | |
| | | | | |
| TRADE | HOUSE | DESCRIPTION | OPTIONS | AMOUNT |
| | | | | |
| 23 INSULATION | C200001 | C20 - DAVEN-UNITD BASE | INSULATE WALLS DRAW 1 | $ 1,312.50 |
| 23 INSULATION | C200001 | C20 - DAVEN-UNITD BASE | INSULATE CEILING DRAW 2 | $ 1,312.50 |
| 23 INSULATION | DL20001 | END UNIT LEFT  DAVEN-BASE | INSULATE  END UNIT LEFT  DAVEN | $ 300.00 |
| 23 INSULATION | DR20001 | END UNIT RIGHT DAVEN-BASE | INSULATE  END UNIT RIGHT DAVEN | $ 300.00 |

1                                          9/12/2006                                          NEW CONTRACT

# COVER SHEET FOR FILING CIVIL ACTIONS

Case No. ....................................

COMMONWEALTH OF VIRGINIA

(CLERK'S OFFICE USE ONLY)*

...................... Prince William County ...................... Circuit Court

...... ACE FIRE UNDERWRITERS INS. CO. ...... v./In re: ...... MASCO CORPORATION ......

**PLAINTIFF(S)** ................................ **DEFENDANT(S)**

I, the undersigned [ ] plaintiff [ ] defendant [x] attorney for [x] plaintiff [ ] defendant hereby notify the Clerk of Court that I am filing the following civil action. (Please indicate by checking box that most closely identifies the claim being asserted or relief sought.)

| | | |
|---|---|---|
| [ ] Accounting | [ ] Confessed Judgment | [ ] Judicial Review |
| [ ] Administrative Appeal | [ ] Conservator of Peace | [ ] Landlord/Tenant |
| [ ] Adoption | [ ] Construe Will | [ ] Law Enforcement Petition |
| [ ] Adoption - Foreign | [ ] Contract Action | [ ] Mechanics Lien |
| [ ] Adult Protection | [ ] Contract Specific Performance | [ ] Medical Malpractice |
| [ ] Aid and Guidance | [ ] Correct/Erroneous State/Local Taxes | [ ] Motor Vehicle Tort |
| [ ] Annexation | [ ] Counterclaim – Monetary Damages | [ ] Name Change |
| [ ] Annulment | [ ] Counterclaim – No Monetary | [ ] Order to Sever |
| [ ] Appeal Decision of ABC Board | Damages | [ ] Partition |
| [ ] Appeal Decision of Board of Zoning | [ ] Cross Claim | [ ] Petition |
| [ ] Appeal Decision of Comp Board | [ ] Custody/Visitation/Support/ | [ ] Product Liability |
| [ ] Appeal Decision of Employment | Equitable Distribution | [ ] Quiet Title |
| Commission | [ ] Declaratory Judgment | [ ] Referendum Elections |
| [ ] Appeal Decision of Local | [ ] Declare Death | [ ] Reformation of Trust |
| Government | [ ] Delinquent Taxes | [ ] Reinstatement of Driving |
| [ ] Appeal Decision of Marine Resources | [ ] Detinue | Privileges |
| Commission | [ ] Divorce | [ ] Reinstatement (General) |
| [ ] Appeal Decision of Voter | [ ] Ejectment | [ ] Removal |
| Registration | [ ] Encumber/Sell Real Estate | [ ] Separate Maintenance |
| [ ] Appointment of Church Trustee, | [ ] Enforce Vendor's Lien | [ ] Standby Guardian/ |
| Substitute Fiduciaries | [ ] Escheat | Conservator |
| [ ] Approval of Right to be Eligible to | [ ] Establish Boundaries | [ ] Termination of Mineral |
| Vote | [ ] Expunge | Rights |
| [ ] Asbestos Litigation | [ ] Forfeiture of U.S. Currency | [ ] Unlawful Detainer |
| [ ] Attachment | [ ] Freedom of Information | [ ] Vehicle Confiscation |
| [ ] Bond Forfeiture Appeal | [ ] Garnishment | [ ] Will Contested |
| [ ] Child Abuse and Neglect - | [x] General Tort Liability (other than | [ ] Writ of Certiorari |
| Unfounded Complaint | motor vehicle) | [ ] Writ of Habeas Corpus |
| [ ] Civil Contempt | [ ] Grievance Procedures | [ ] Writ of Mandamus |
| [ ] Claim Impleading Third Party | [ ] Guardian/Conservator Appointment | [ ] Writ of Prohibition |
| Defendant – Monetary Damages | [ ] Impress/Declare a Trust | [ ] Writ of Quo Warranto |
| [ ] Claim Impleading Third Party | [ ] Injunction | [ ] Wrongful Death |
| Defendant – No Monetary Damages | [ ] Interdiction | [ ] Other |
| [ ] Complaint - (Miscellaneous) | [ ] Interrogatory | |
| [ ] Compromise Settlement | [ ] Intentional Tort | |
| [ ] Condemnation | [ ] Judgment Lien-Bill to Enforce | ...................... |

[x] Damages in the amount of $ ............ 146,091.78 ............ are claimed.

............ March 22, 2012 ............     *[signature]*

**DATE**     [X] PLAINTIFF  [ ] DEFENDANT     [•] ATTORNEY FOR [•] PLAINTIFF
                                                                    [ ] DEFENDANT

............ John B. Mesirow ............

**PRINT NAME**

............ 1307 New Hampshire Ave. NW, Suite 400, Washington, DC 20036; (202) 463-0303 ............

**ADDRESS /TELEPHONE NUMBER OF SIGNATOR**

* See reverse side for Civil Action Type Codes
- for Clerk's Office Use Only

## Civil Action Type Codes
### (Clerk's Office Use Only)

| | |
|---|---|
| Accounting ........................................................ ACCT | Enforce Vendor's Lien ................................................. VEND |
| Administrative Appeal ...................................... AAPL | Escheat ......................................................................... ESC |
| Adoption ......................................................... ADOP | Establish Boundaries .................................................. ESTB |
| Adoption – Foreign ......................................... FORA | Expunge ....................................................................... XPUN |
| Adult Protection ............................................. PROT | Forfeiture of U.S. Currency ...................................... FORF |
| Aid and Guidance ............................................... AID | Freedom of Information ................................................ FOI |
| Annexation ........................................................ ANEX | Garnishment ................................................................ GARN |
| Annulment ......................................................... ANUL | General Tort Liability (Other Than Motor Vehicle) ..... GTOR |
| Appeal Decision of ABC Board ...................... ABC | Grievance Procedures ................................................ GRV |
| Appeal Decision of Board of Zoning ............. ZONE | Guardian/Conservator Appointment ....................... APPT |
| Appeal Decision of Comp Board ................... ACOM | Impress/Declare a Trust ............................................ TRST |
| Appeal Decision of Employment Commission ........... EMP | Injunction .................................................................... INJ |
| Appeal Decision of Local Government ............ GOVT | Interdiction ................................................................. INTD |
| Appeal Decision of Marine Resources Commission ... MAR | Interpleader ................................................................ INTP |
| Appeal Decision of Voter Registration .......... AVOT | Intentional Tort .......................................................... ITOR |
| Appointment of Church Trustee, Substitute | Interrogatory ............................................................... INTR |
|   Fiduciaries ................................................. AOCT | Judgment Lien – Bill to Enforce ............................... LIEN |
| Approval of Right to be Eligible to Vote ....... VOTE | Judicial Review .............................................................. JR |
| Asbestos Litigation ............................................. AL | Landlord/Tenant ............................................................ LT |
| Attachment ......................................................... ATT | Law Enforcement Petition .......................................... LEP |
| Bond Forfeiture Appeal ..................................... BFA | Mechanics Lien .......................................................... MECH |
| Child Abuse and Neglect – Unfounded Complaint ...... CAN | Medical Malpractice ................................................... MED |
| Civil Contempt ................................................. CCON | Motor Vehicle Tort ...................................................... MV |
| Claim Impleading Third Party Defendant – | Name Change ................................................................ NC |
|   Monetary Damages ..................................... CTP | Order to Sever ............................................................ SEVR |
| Claim Impleading Third Party Defendant – | Partition ...................................................................... PART |
|   No Monetary Damages ................................. CTP | Petition ......................................................................... PET |
| Complaint – (Miscellaneous) ......................... COM | Product Liability ........................................................ PROD |
| Compromise Settlement ............................... COMP | Quiet Title .................................................................... QT |
| Condemnation ................................................ COND | Referendum Elections ................................................ ELEC |
| Confessed Judgment ............................................ CJ | Reformation of Trust .................................................. REFT |
| Conservator of Peace ........................................ COP | Reinstatement of Driving Privileges ....................... DRIV |
| Construe Will ................................................... CNST | Reinstatement (General) ............................................ REIN |
| Contract Action ............................................... CNTR | Removal ...................................................................... REM |
| Contract Specific Performance ...................... PERF | Restore Driving Privileges ........................................ REST |
| Correct/Erroneous State/Local Taxes ........... CTAX | Separate Maintenance ................................................ SEP |
| Counterclaim – Monetary Damages ................. CC | Standby Guardian/Conservator ............................... STND |
| Counterclaim – No Monetary Damages ............ CC | Termination of Mineral Rights ................................. MIN |
| Cross Claim .................................................... CROS | Unlawful Detainer ....................................................... UD |
| Custody/Visitation/Support/Equitable Distribution ...... CVS | Vehicle Confiscation .................................................. VEH |
| Declaratory Judgment ....................................... DECL | Will Contested .......................................................... WILL |
| Declare Death ................................................. DDTH | Writ of Certiorari .......................................................... WC |
| Delinquent Taxes ............................................ DTAX | Writ of Habeas Corpus .............................................. WHC |
| Detinue ................................................................ DET | Writ of Mandamus ...................................................... WM |
| Divorce ............................................................... DIV | Writ of Prohibition ...................................................... WP |
| Ejectment ......................................................... EJCT | Writ of Quo Warranto ............................................... WQW |
| Encumber/Sell Real Estate ................................. RE | Wrongful Death ............................................................ WD |

FORM CC-1416 (MASTER) PAGE TWO 10/10

# FILED

**2012 MAR 26  PM 1:38**

**CIRCUIT COURT CLERKS OFFICE**
**PRINCE WILLIAM COUNTY. VA**

BY_____DEPUTY.